# SUPREME COURT.

## FRANKLIN B. SEACORD agt. CALEB MORGAN and JOHN WARREN.

The benefit resulting from the execution of an *undertaking* to the appellant in the right of appeal, and the suspension of the power of collecting the judgment appealed from, furnish a sufficient valuable *consideration* for such an instrument, within the rules and principles of the common law. Besides, it was designed by statute to effect a given purpose, and by the statute it was designed to create a binding obligation upon those who execute it, whether it expresses a formal consideration or not.

The obligors who sign an undertaking on appeal are clearly liable to pay a judgment of affirmance, as to one defendant, although there is a judgment of reversal as to the other. In such a case it is a judgment affirmed in part and reversed in part. *

The judgment of the court of appeals is to be remitted to the court below to be enforced according to law. It must, therefore, be brought *formally* to the notice of the court below, and be made one of its judgments. It has no other known means of enforcing the judgment of the court of appeals, and until it makes an order to that effect, and the judgment of the court of appeals becomes incorporated in its own records, no proceedings can be taken to enforce the judgment of the appellate court. Merely the filing of the remittitur with the clerk and his adjustment of the costs thereon is not sufficient. (*See foot note.*)

*Second District, General Term, May,* 1859.
THE facts will appear in the opinion.

S. E. LYON, *for the plaintiff.*
W. H. TAGGART, *for defendants.*

By the court—BROWN, Justice. The written undertaking upon which this action is brought was given to the plaintiff pursuant to the 335th section of the Code of Procedure. It recited that the above named Franklin B. Seacord had recovered a judgment against one Nicholas Miller and Leonard P. Miller, affirming upon appeal a judgment against them in fa-

Seacord agt. Morgan.

vor of Seacord, entered upon the direction of a single judge, for $202.27 damages, with $59.27 costs of appeal, and that, feeling aggrieved thereby, they intended to appeal to the court. of appeals of the state of New-York. It then proceeded to declare that John Warren and Caleb Morgan, above named, did thereby, pursuant to the statute, undertake that such appellants will pay all damages and costs awarded against them on such appeal, not exceeding $250. And further, that if the judgment appealed from, or any part thereof, be affirmed, that the appellants would also pay the amount directed to be paid by the said judgment, or the part of such amount as to which the said judgment shall be affirmed, if it be affirmed only in part, and all damages which shall be awarded against said appellants on such appeal. The giving of this undertaking was a condition indispensable to the appeal, and without which the action could not be brought before the court of appeals to be reheard. Its further effect was, to stay the collection of the money awarded to the respondent by the judgment of the supreme court, during the pendency of the appeal and until the same was dismissed or determined upon the merits. The undertaking is not executed under seal, nor does it express a money consideration. But the benefit resulting from the execution of the paper to the appellants in the right of appeal, and the suspension of the power of collecting the judgment appealed from, furnish a sufficient valuable consideration within the rules and principles of the common law. Besides, it was an instrument created by statute and designed to effect a given purpose, and it is within the province of the law, and doubtless such was its purpose, to make the undertaking a binding obligation upon those who executed it, whether it expressed a formal consideration or not.

Nor do I perceive any force in the objection taken by the defendants, that, because the judgment was reversed as to the defendant, Leonard P. Miller, there has been no breach of, or rather that no obligation remains to be executed upon the undertaking. The condition of the undertaking was, that if the judgment appealed from, or any part thereof, be affirmed, that

the defendants would pay, &c.  The argument in support of this objection proceeds upon the ground that the words " any part thereof" refer exclusively to the money or thing for which the judgment was rendered, and not to the parties against whom it was rendered.

By reference to the record of the judgment appealed from, it will be seen that it was not rendered against the defendants as joint debtors or obligors, but against Nicholas Miller as the maker, and Leonard P. Miller, as the indorser of the same promissory note.  Both parties united in the same appeal, and gave a joint undertaking.  Now, Leonard P. Miller, the indorser, might have appealed alone, for his contract was a separate contract from that of Nicholas, and, had he so appealed, the judgment in the supreme court would have remained in full force against Nicholas, the maker of the note, and the plaintiff would have been at liberty to issue his execution against him or take any other measures to enforce the collection of the money.

By a joint appeal by both defendants, the plaintiff's proceedings against both have been suspended, and both have had the benefit of the rehearing upon the appeal.  The defendants who signed the undertaking were the sureties of both Nicholas and Leonard, and they undertook that both should pay if the judgment was affirmed.  The law allows a plaintiff to unite the maker and indorser of a promissory note in the same action and it is not in his power to prevent the defendants in such an action from taking a joint appeal upon the same undertaking, but they may sever if they choose.  And it would be an unjust and an unwise construction to take away the plaintiff's remedy upon the undertaking, because he had failed to maintain the original judgment against all the defendants.

The *part* of the judgment referred to in section 335 of the Code, and in the written undertaking, is not limited to the money which is the subject of the recovery.  The thing to be recovered, whether it is money or personal property, is a part of the judgment, and so are the person or persons from whom

it is recovered. Both the money adjudged to the plaintiff and the person or persons who are adjudged to pay it are essential and material parts of the judgment, and a judgment is affirmed in part, and reversed in part, when it is affirmed as to one, and reversed as to the other. The obligation, therefore, of the defendants who signed the undertaking in this action to pay the judgment recovered against Nicholas Miller, is clear and indisputable.

By the 12th section of the Code, the court of appeals may reverse, affirm or modify the judgment or order appealed from in whole or in part, and as to any or all the parties, and its judgment shall be remitted to the court below to be enforced according to law. It appears that the remittitur was filed with the clerk of the county of Westchester, on the 17th of December, 1855, who thereupon settled the plaintiff's costs against the defendant Nicholas Miller, at $173.80, and also ascertained that he was entitled to recover against Nicholas Miller $44.08, for interest upon the judgment by way of damages, for which two sums of money the plaintiff afterwards issued his execution to the sheriff of the county of Westchester, against Nicholas Miller, and had the same returned unsatisfied. It does not appear, however, that any order or judgment was ever entered in this court upon filing the remittitur, nor was the same ever brought to the notice or knowledge of the court, in any way other than such filing with the clerk, and his adjustment of the costs.

I apprehend that this omission is fatal to the plaintiffs' right to maintain this action. The judgment of the court of appeals is to be remitted to the court below to be enforced according to law. It must, therefore, be brought formally to the notice of the supreme court, and be made one of its judgments. It has no other known means of enforcing the judgment of the court of appeals, and until it makes an order to that effect, and the judgment of the court of appeals becomes incorporated in its own records, no proceedings can be taken to enforce the judgment of the appellate court.

On this ground alone, I think the judgment and the report

Seacord agt. Morgan.

of the referee should be set aside, and then the plaintiff will have an opportunity to apply to the special term for leave to enter the formal order of this court upon the remittitur, upon such terms as shall be equitable and just, as he may be advised.[1]

[1] NOTE.—This seems to be adverse in some respects to the case of *Judson* agt. *Gray*, *ante*, *page* 289.   How far the court of appeals indorsed the views of the supreme court on this point is not known, as no written opinion was given by the court of appeals in that case.

It is an appropriate opportunity now to give this question some little examination, which we propose to do.  And, as our experience has been to a considerable extent practical as well as theoretical on this question, we would suggest:

*First.*  That a *remittitur* from the court of appeals should never be delivered to an individual, whether party, attorney, counsel or other person, to be filed with the clerk below; but should in all cases invariably be *transmitted by mail* by the clerk of the appellate court *to the clerk of the court below*, to be filed (it is customary to transmit them to the attorney of the prevailing party).   Thus, the *remittiturs*, as in cases of *returns* made to the clerk of the appellate court, would remain in the custody of the courts with their proper officers, except during the time of their *legal transmission*.  If this rule was adopted, such a case as that of *Judson* agt. *Gray* would never again arise.  And, it would seem that section 10 of chapter 280, of the judiciary act of 1847, which requires that "such proceedings shall be remitted *to the office of the county clerk*, with whom the record was filed, or by whom said order was entered or decree enrolled," is still unrepealed and operative.

*Second.*  On receipt of the remittitur by the clerk of the court below, let it be immediately filed, thus showing the time that *jurisdiction* commences with the court below.   If the judgment of the appellate court should require amendment or correction, before proceeding in the cause in the court below, we see not why the appellate court have not the same control over their judgments in regard to making amendments, &c., as was decided in *Judson* agt. *Gray*, that the court below have over their judgments while the appeal is pending in the appellate court. This must necessarily be so.  (*See Palmer* agt. *Lawrence*, 1 *Seld*. 455.)   But if in any case proceedings have been instituted and carried on to any extent in the court below, and it becomes necessary to apply to the appellate court for an amendment or correction of their judgment, the court below can grant an order that the remittitur be returned to the appellate court, for that purpose.   On this point we disagree with the decision in *Vermilye* agt. *Selden*, 6 *How.* 41; *S. C.* 3 *Sand*. 683.

And, *Third.*  On filing the remittitur in the court below, and it appearing that the judgment of the appellate court is correct, such judgment shall "be enforced according to law."  (*Code,* § 12.)   How is that?  Let the attorney of the prevailing party give notice to his adversary (*see McCall's Forms, p.* 161), that the re-

mittitur has been filed, and that judgment will be entered thereon, and if a new trial is not awarded, that the costs will be taxed by the clerk, &c. On the day specified in the notice, the prevailing party appears before the clerk and procures the taxation of his costs (on opposition or otherwise), and then enters his order (*see McCall's Forms, p.* 90), for judgment on the remittitur, with costs (or not, as the case may be), in the usual manner with the clerk, and thereupon the proper proceedings to enforce the judgment are authorized.

Whether, where the remittitur has not been filed, or the order for judgment has not been entered, and proceedings have been instituted upon the judgment of the appellate court, the court below have not the power to order these omissions to be corrected *nunc pro tunc, quære?* Perhaps, in the case of *Judson* agt. *Gray* (*supra*), we are bound to presume that the supreme court did direct the remittitur to be filed, and the proper order entered *nunc pro tunc*, as soon as the error was discovered.—[REPORTER.