By the Court.*—Robertson, J.
Although no exception was taken to the report of the referee upon the ground that the cause of action as found was not that set forth in the complaint, which seems to be necessary in some cases (Belknap v. Seely, 14 N. Y. [4 Kern.], 143 ; Parsons v. Suydam, 3 E. D. Smith, 280); yet the objection was distinctly taken on the motion to dismiss the complaint, after the plaintiff’s evidence had been introduced, that he had not established his cause of action, and, as will presently be seen, all subsequent evidence was admitted for another purpose,—that of taking an account. A subsequent finding by a referee of a different cause of action, although fully proved, would still less deprive the defendant of the benefit of such an objection, since in fact it would be an admission that it was well founded.
This becomes the more proper, as the referee, after deciding upon mere circumstantial testimony, that the .parties stood in the relation of mortgagor and mortgagee, so as to entitle the plaintiff merely to redeem the premises, instead of entirely avoiding the instruments assailed, prevented the defendant from introducing any direct testimony to disprove the existence of such relation. ¡Neither party had charged or admitted it in the proceedings, or apparently attempted knowingly to prove or disprove it. Such an exclusion of evidence 'involves in the first place the question how far it was a proper exercise of discretion and not the deprivation of an absolute light. The order of introducing evidence, the re-calling of a *267 witness already examined, to prove a new fact or explain his testimony, and the opening of the case to allow new evidence, are within such discretion. A general introduction of new evidence on one side as to any particular point not before touched, without a like permission to the other, would hardly be a fair exercise of it: since the utter absence of testimony on one side as to material points might thus by the favor of the court after his adversary had closed his case be made the means of great injustice, by cutting off testimony to rebut that offered to make up such deficiency. Although the plaintiff’s testimony may have been sufficient to sustain the case as found by the referee, it was also pertinent to that set out in the complaint, notwithstanding that nothing was said in it, as will appear hereafter, of any advances, or security, or mortgage. It is evident that although the referee should have already determined in his own mind, that the transactions between the parties were loans secured by a mortgage, he could not decree any relief according to that view, until the value of the different parts of the premises as well as the amount of advances had been proved, so that the evidence could not be closed until after such proof of value had been given. Evidence of value, however, would have some bearing on the nature of the instruments executed to the defendant: if it greatly exceeded the amounts advanced by him, it would tend to show them to be mortgages or something else than absolute conveyances. The permission given to the defendant to give proof of value to rebut that conclusion, would not the less render improper the exclusion of evidence on his part to prove there was no mortgage, as he was entitled to introduce, if any, all kinds of evidence to do so. He was permitted to introduce evidence of advances of money, but that affected the terms of redemption, and the state of the accounts, although in some measure it bore on the question of the nature of the instruments. He was even prevented from showing that the property did not yield enough, part of the time, to pay expenses, or that the plaintiff appropriated the rents during another part to his own use. It is possible, however, that the exclusion of the evidence on the defendant’s part to disprove every relation of mortgagor or mortgagee, may have been a mere exercise of discretion, although stretched to its utmost limits, and as a question of surprise it may only be available *268 on' a motion for a new'trial at special term ; but there are questions involving the merits embraced in the appeal taken.
I have been unable to reconcile the cause of action, as found by the referee, with that made in the complaint. That does not state any money advanced or agreed to be advanced by the defendant: on the contrary, it alleges the payment of the ¡Newell ■ judgment by the plaintiff, his having furnished money to the defendant to pay those of Crosby and McDtinald, under which the sale was made, and also that he paid the interest on the mortgage,.the taxes and water rates, and the expenses of repairs and alterations, as well as received rents from tenants, and even from the defendant, apparently as evidence of ownership. There were no other moneys advanced or to be advanced. The plaintiff alleges in his complaint"‘that the judgment confessed by him was given to enable the defendant to redeem, and on his promise to convey the property to the plaintiff as soon as he had done so. So, too, he alleges therein that the quit-claim was given to enable the defendant to procure a new loan, and on a promise of re-conveying immediately afterwards. ¡No terms, qualifications, or conditions are stated as to such re-conveyance ; on the contrary, it is alleged to have been peremptorily demanded. There is no pretence of the defendant taking security for any sums to be advanced, no admission of any advance. The assumption that the instruments assailed by the complaint were taken as security for sums advanced and to be advanced, and valid as mortgages, contradicts the main charges in it. There is no evidence of any promise to re-convey, except the plaintiff’s testimony; and he does not state any terms or conditions of re-conveyance; the defendant denies it;
The referee has also found that the plaintiff relinquished his right to the part of the premises on which ¡Nos. 319 and 321 Bleecker Street are built. Whether this was done by writing, or orally, is not stated: there is no evidence of the former, and the only ground of inferring a relinquishment was that the plaintiff did not collect the rents of them, and told the builder, Rodgers, that he did not own the rear ground.
It will not be necessary to inquire minutely into the question whether there is evidence in the case to sustain the referee’s findings, which must ultimately rest wholly upon the superior reliance to be placed upon the plaintiff’s testimony rather than upon that of the defendant, notwithstanding the disproof of the *269 'former in various particulars, such, as his payment of different judgments, his ignorance as to such judgments, and his never having held himself out as agent or given receipts as such, his contradiction of himself, and the deplorable uncertainty and feebleness of his memory in many particulars,- owing, perhaps, to his age. And yet the most important parts of the defendant’s answer are virtually sustained by the report. That and the account on which it is based, concede that the defendant bought the Hewell judgment, that the moneys for which the judgment was confessed were really due, that he paid his own moneys to redeem under the sheriff’s sale, employed the moneys received from the Savings Bank to pay the Land and Trust Company, bought and paid for the gore and put up the buildings on it at his own expense, and paid five hundred dollars on account of the mortgage on the premises. The plaintiff undoubtedly let the premises and occupied part; received the rent of the rest and expended part of it for the support of himself and family, and furnished moneys therefrom to the defendant to pay taxes and incumbrances. The only question is, in what capacity he so received and expended the rents. The defendant claimed that the plaintiff acted as agent,- and he is supported by the plaintiff’s own statements in writing and under oath, and his denial of ownership, and the fact that for nearly ten years he made no attempt to get back his title, and did some further act to preclude himself from claiming the land on which 319 and 321 Bleecker Street stood. The defendant also stated that the plaintiff retained the amount expended, on the understanding he was to get his living out of the premises after paying taxes and incumbrances. This does not seem to be a very unnatural arrangement between a father and son, where the latter has twice saved the property from sacrifice by taking up judgments and redeeming it, and where the formér has no means to pay off the latter’s advances; and it is at least equally reconcilable with the facts proved, as the existence of a mortgage. The explanation given by the learned referee of the plaintiff’s statements of being agent, that the defendant was mortgagee in possession, is unsatisfactory. The plaintiff claims he was never out of possession, he continued to occupy part of the premises, rented the rest, received the rents and paid the incumbrances as owner; the defendant occupied only a part, and for that the plaintiff says he paid him, rent. One or the other *270 statement is clearly untrue! There is a singular absence of corroborative testimony, apparently within reach on both sides. And it appears to me very dangerous, after the lapse of ten years, to take away a title derived under hostile proceedings against the plaintiff, by converting an absolute deed from a sheriff into a mere mortgage to the party to whom it was given, solely on the contradictory and contradicted testimony of the supposed mortgagor.
The promise to give a deed back, could not convert the defendant into a mortgagee. He might be rendered a trustee, in case he had induced the plaintiff, himself, to abstain from redeeming; but there is no evidence of that. Any misrepresentation in regard to the quit-claim deed could not deprive the defendant of the title which he acquired by redemption under the Rewell judgment, independently of his right to redeem under his own: and which he could have acquired without any assistance from the plaintiff.
But the main difficulty remains that the referee has given • judgment on a cause of action as found by him, different from that sued upon and set out in the complaint. That was for fraud in obtaining a deed from the sheriff, and a quit-claim "deed-from the plaintiff. The fraud consisted in instigating a suit in the plaintiff’s name, allowing a judgment to be obtained against him for attorneys’ fees in such suit, omitting to apply moneys furnished to pay such claim, procuring a sale by a sheriff, using a previous judgment that had been paid by the plaintiff, and one newly confessed, to redeem from such sale, inducing- the plaintiff to believe that the title was still in- him-, and procuring a quit-claim on a promise forthwith to re-convey, and a false representation of the object of procuring it. Such fraud not being proved, the referee has found a cause of action on contract by which the defendant took the Rewell judgment, sheriff’s and quit-claim deeds as security for moneys advanced and to be advanced. This is not a case of variance under the 16th section of the Code, but a failure to prove the cause of action in its entire scope and meaning (Salters v. Genin, 7 Abb., 193 ; Texier v. Gouin, 5 Duer, 389 ; Walter v. Bennet, 16 N. Y., 250; Kelsey v. Western, 2 N. Y. [2 Comst.], 500). An amendment of the proceedings to correspond with suchffindings, even if it could now be made, would change substantially the *271 claim, an action to set aside entirely for fraud being entirely different from one to redeem from the mortgage.
Ho stronger case can well be imagined, of surprise by proving an entirely different cause of action from that set out in the complaint. Had the pleadings been at common law as formerly, a replication which had set up the cause of action such as that' found would ¿ave been such a departure from the complaint as to make the replication defective. The issues were fried on a question of fraud, to which alone the testimony was directed. The referee held that by indirection and inference it established circumstantially a contract not set up in the complaint, yet refused to allow the defendant to introduce direct testimony to rebut such inference. The report, therefore, was unwarranted by the evidence.
The judgment should be reversed, and the order of reference discharged, a new trial to be had, and the costs of the appeal to abide the event. > /

 Present Moncrief, Robertson and Monell. JJ.